**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **ROGER WILSON, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **1:15-CV-4453-SCJ** |
| **1400 NORTHSIDE DRIVE, INC. et al.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

In this Fair Labor Standards Act (FLSA) case, Plaintiffs contend that their former employer failed to pay the minimum wage.   Doc. 1.[1]  They seek partial summary judgment on several issues, and Defendants' counterclaims.  Doc. 45. Because no genuine factual disputes exist, and in light of Defendants' sparse opposition, the Court **GRANTS** Plaintiffs' motion.

## I.     STANDARD OF REVIEW

Summary judgment is appropriate when the moving party establishes that, based upon the evidence presented, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he requirement that a dispute be 'genuine' means simply that there must be more than some metaphysical doubt as

---

[1] All record citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

to the material facts." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 261, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) (citations and internal quotation marks omitted). The court views the record and draws all factual inferences in the light most favorable to the non-movant[, in this case, MVG]. <u>Carlson v. FedEx Ground Package Sys., Inc.</u>, 787 F.3d 1313, 1317 (11th Cir. 2015). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." <u>Id.</u> at 1318 (quoting <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997)).

<u>Dean–Mitchell v. Reese</u>, 837 F.3d 1107, 1111-12 (11th Cir. 2016).

Local Rule 56.1 embues that standard with additional color and depth. The moving party must include with its

> motion and brief a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried. Each material fact must be numbered separately and supported by a citation to evidence proving such fact. The court will not consider any fact: (a) not supported by a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts.

NDGa., L.R. 56.1(B)(1).

The non-moving party has obligations, too. It must respond "to the movant's statement of undisputed facts" in like fashion (separate, numbered paragraphs, etc.). NDGa., L.R. 56.1(B)(2).

This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph

2

number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1). . . . The court will deem the movant's citations supportive of its facts unless the respondent specifically informs the court to the contrary in the response.

Id. at (2)(a)(2).

A.   **Plaintiffs' Statement of Undisputed Fact**

Of the eighty-seven paragraphs in Plaintiffs' statement, Defendants contest only five: paragraphs 2, and 84-87. Doc. 52-16. Because they otherwise comply with L.R. 56.1, the Court deems admitted the uncontested paragraphs (1, and 3-83).

Paragraph two relates to Swinging Richard's sale of alcoholic beverages. Doc. 45-1 at 2 (the club's website advertises its sales of a variety of liquors, many of which swam in interstate commerce currents before their purchase by the club). Defendants say the paragraph lacks a foundation and contains hearsay. Doc. 52-16 at 2. But claiming "hearsay" without any elaboration is not enough to sustain that objection, particularly when evidence (testimony and a website) supports the fact to which Defendants object. The same goes for foundation objections, particularly when made in a L.R. 56.1 response. Defendants do not otherwise contest the alcohol allegation (such as by pointing out that the

3

evidence cited does not support the fact), so it, too, is admitted.

Even if the objections had merit, it doesn't matter. The alcohol allegation relates only to 1400's possible enterprise liability under the FLSA. As discussed below, collateral estoppel bars relitigation of that issue, which is in any case supported by other, uncontested, facts. See doc. 45-1 at 2 ¶ 3 ("1400 derives revenues from fees paid by customers on two ATMs in Swinging Richards, one of which uses the phone lines and the other of which uses an Internet connection.").

Paragraph 84 states that "Plaintiffs receive no wages for their dancing work at Swinging Richards." Doc. 45-1 at 14. Defendants disagree, stating that "house-set, minimum charges for table dances and VIP Room visits count as "wages[,]"[] not "tips[,]"[] per the IRS and Department of Labor." Doc. 52-16 at 3. That, however, is a legal conclusion that fails to qualify as a valid objection under L.R. 56.1(B)(2)(a)(2). Still, Plaintiffs' "fact" itself contains hints of conclusion. Whether Defendants paid "wages" is in some sense the ultimate issue in this litigation. To the extent paragraph 84 refers to that issue, then, it is *not* deemed admitted. Insofar as it Plaintiffs meant that they do not receive any money directly from Defendants (i.e., that they received money only from

customers), that fact *is* admitted.

Paragraphs 85-87 relate to Plaintiffs' knowledge of a previous FLSA lawsuit against the same defendants as in this case, and of their ability to opt-in to its settlement. Doc. 45-1 at 14-15. Defendants' object that "[w]hat plaintiffs knew cannot be determined without a thorough testing and examination of their credibility." Doc. 52-16 at 3. But that is not a L.R. 56.1-compliant objection—it does not directly refute Plaintiffs' proferred fact, it does not object to admissibility, and it does not highlight a lack of evidentiary support. The Court therefore deems paragraphs 85-87 admitted.

Plaintiffs' Statement of Undisputed Fact, all of which the Court deems admitted, forms the basis for what follows.

## II.    BACKGROUND

"Swinging Richards is a nightclub featuring nude male dancers in Atlanta, Georgia, which is owned and operated by Defendant 1400 Northside Drive, Inc." Doc. 45-1 at 1 (Plaintiffs' Statement of Material Fact). 1400 is itself owned by defendant C.B. Jones, who also owns the property on which the club sits. Id. at 9. Plaintiffs Zachary Chastain and Travis Delduca are former male strippers who worked at the club from 2013 until late-2016 (October for Delduca, December for

Chastain).  Id. at 3.  Wilson, who began dancing at the club in 2013, remains employed by 1400.  Id. at 3.

1400 classifies its dancers as independent contractors and compensates them exclusively through customer tips. Doc. 45-1 at 14.  It does not, however, "keep records of payments made to dancers by customers for performances on stage . . . [or] for table-side dances." Id. at 10.  Cash from VIP room customers stays in an envelope with the VIP doorman "until the end of the night, at which time the dancer collects it." Id. at 11.  1400 issues checks to dancers twenty-four hours after a VIP room customer pays with a credit card.

In March 2014, 1400 "began having dancers fill out timesheets." Doc. 45-1 at 11. "[T]hose timesheets contain[ed] dancers' time in and out, total VIP rooms, and total tips, but not the actual amount earned from VIP dances." 1400's accountant then filed those timesheets, "and did nothing else with them." Id.

"At some point . . . Defendants began having the VIP manager track the amounts of money dancers received in cash for VIP dances" by giving the dancer a receipt. Doc. 45-1 at 13.  That manager never entered the total cash received amount into "his computer spreadsheet." Id.  The receipts were "periodically" sent to 1400's accountant, but he "simply put them in a box"—he did not use the

receipts to calculate revenues for tax return purposes.  Id.  Instead, the accountant "extrapolated the dancers' minimum VIP fees based on the length of the room rentals recorded on the VIP manager's spreadsheet."  Id.  "On a month-to-month basis, the club did nothing to account for the dancers' VIP fees."  Id.  Dancers now must write "their total cash received on the back of their timecards, [but] Swinging Richards does nothing with that information for accounting purposes."  Id. at 14.

## III.   ANALYSIS

Plaintiffs seek summary judgment on seven discreet issues: (1) whether Plaintiffs were employees or independent contractors; (2) whether 1400 "is an 'enterprise engaged in commerce' as that term is used in the FLSA and is subject to the FLSA's minimum wage provisions;" (3) whether "Jones is a joint employer;" (4) whether "Plaintiffs are not exempt 'creative professionals;'" (5) whether VIP room and table dance fees qualified as "service charges" that offset Defendants minimum wage obligations; (6) whether Plaintiffs can obtain $7.25/hr in back wages "for each hour worked in the statutory limitations period, in addition to reimbursement of all fees and fines paid;" and (7) whether Defendants' breach of contract and unjust enrichment counterclaims fail.  Doc.

45-5 at 30-31.  They also contend that two orders in another FLSA case brought by Swinging Richards dancers should bar relitigation of issue one, and issues three through seven.  Id. at 5.  Before delving into all that, however, a Local Rule requires the Court to address Defendants' summary judgment response.

Local Rule 7.1(B) makes clear that "[f]ailure to file a response shall indicate that there is no opposition to the motion."  And defendants' response "brief" (doc. 52) as discussed in a previous Order (doc. 57), lacks much substance.  For example, in addressing issue one (enterprise liability), it states in its unedited entirety: "[s]ee, discussion in the comments and annotations of the 11th Circuit Suggested Pattern Jury Instructions, Exhibits 1 and 2.   Clearly, these determinations involve questions of law for a jury to decide."  Doc. 52.

As made clear in its previous Order, the Court will not sift through cited but unargued legal authorities, briefs from other cases, and other documents incorporated by reference.   The Court will not manufacture arguments for Defendants.  In essence, responses like Defendants' enterprise liability argument are no response at all.

Defendants' "creative professionals" defense, their response to Plaintiffs' proposed calculation of back pay, and their argument in favor of their

counterclaims contain similar flaws.  Doc. 52 at 4-6.  For each one, Defendants barely respond at all, and when they do, they simply refer the Court to case law and briefing from another FLSA action involving 1400 and many of the same issues.  Id.

Still, the Court discerns opposition from Defendants' limited "responses." It therefore will not deem anything unopposed pursuant to L.R. 7.1(B), with the exception of Plaintiffs' employee/independent contractor argument (Defendants fail to address that issue at all).  But Defendants did themselves no favors.  The success or failure of Plaintiffs' summary judgment motion on the issues to which Defendants barely respond thus rises and falls with Plaintiffs' arguments and facts alone.  But first, Plaintiffs' collateral estoppel argument.

### A.   Non-Mutual Offensive Collateral Estoppel

"Offensive, nonmutual collateral estoppel is a doctrine under which a plaintiff asserts that a defendant is barred from litigating an issue based on a decision rendered in a case in which the plaintiff was not involved." Demaree v. Fulton Cty. Sch. Dist., 515 F. App'x 859, 863 (11th Cir. 2013) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327–28 (1979)).  "In order for nonmutual collateral estoppel to apply, the issue currently before the Court (1) must be

identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated; and (3) the determination in the prior proceeding must have been a crucial and necessary part of the judgment in the earlier action." Berry v. Great Am. Dream, Inc., No. 1:13-CV-3297-TWT, 2014 WL 5822691, at *7 (N.D. Ga. Nov. 10, 2014) (citing A.J. Taft Coal Co. v. Connors, 829 F.2d 1577, 1580 (11th Cir.1987)).

As mentioned, this is not 1400's first litigation rodeo. In Henderson v. 1400 Northside Drive—a case brought by male strippers alleging the same minimum wage claims Plaintiffs here assert—this Court held that 1400 suffered enterprise liability under the FLSA because (1) it had gross annual sales "in excess of $500,000," and (2) it engaged in commerce by selling customers alcohol that it obtained "from outside of Georgia." 2016 WL 3125012, at *2 (N.D. Ga. June 3, 2016). It also held that Jones incurred individual liability because he wielded enough control over 1400 to qualify as an employer. Id. at *3. In a separate Order, the Court rejected 1400's creative professional defense because the strippers' dancing did not reflect a sufficiently high degree of creativity. Henderson v. 1400 Northside Drive, Inc., 110 F. Supp. 3d 1318, 1322 (N.D. Ga. 2015).

Only the creative professional defense suffers a relitigation bar in this case. The issue is factually and legally identical in both actions (Defendants here admit all of the same facts that supported <u>Henderson</u>'s conclusion, <u>see</u> doc. 45-1 at 4), <u>see id.</u> at 1321-22, it was undeniably litigated in <u>Henderson</u>, and it underlay the Court's judgment in that case because, if successful, it would have barred the <u>Henderson</u> plaintiffs' claims, as it would here.  Plaintiffs' request for summary judgment on that issue is **GRANTED**.

Enterprise liability and Jones' status as an employer, however, escape <u>Henderson</u>'s estoppel effects.  Facts unique to each case drive both issues.  And unlike in <u>Henderson</u>, Defendants resist at least some of those facts.  <u>See</u> doc. 45-1 at 2.   Before addressing those issues though, the Court first examines the unopposed question of whether Plaintiffs were 1400's employees or independent contractors.  If they qualify as the latter, their FLSA claims fail.

**B.    <u>Employment Status</u>**

As noted, Defendants never responded to Plaintiffs' employee arguments. That, per L.R. 7.1(B), signals no opposition.

Numerous other courts have examined this issue and held that exotic dancers are employees under the FLSA.  <u>See</u> <u>Reich v. Circle C. Investments, Inc.</u>,

998 F.2d 324, 328 (5th Cir. 1993); <u>McFeeley v. Jackson St. Entm't, LLC</u>, 47 F. Supp. 3d 260, 273 (D. Md. 2014); <u>Hart v. Rick's Cabaret Int'l, Inc.</u>, 967 F. Supp. 2d 901 (S.D.N.Y. 2013); <u>Clincy v. Galardi S. Enterprises, Inc.</u>, 808 F. Supp. 2d 1326 (N.D. Ga. 2011); <u>Thompson v. Linda And A., Inc.</u>, 779 F. Supp. 2d 139, 151 (D.D.C. 2011); <u>Harrell v. Diamond A Entm't, Inc.</u>, 992 F. Supp. 1343, 1350 (M.D. Fla. 1997); <u>Reich v. Priba Corp.</u>, 890 F. Supp. 586, 592 (N.D. Tex. 1995); <u>Stevenson v. Great Am. Dream, Inc.</u>, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013); <u>Butler v. PP & G, Inc.</u>, 2013 WL 5964476 (D. Md. Nov. 7, 2013); <u>Morse v. Mer Corp.</u>, 2010 WL 2346334 (S.D. Ind. June 4, 2010); <u>Martin v. Priba Corp.</u>, 1992 WL 486911 (N.D. Tex. Nov. 6, 1992); <u>Donovan v. Tavern Talent & Placements, Inc.</u>, 1986 WL 32746 (D. Colo. Jan. 8, 1986).

Defendants' lack of opposition, coupled with the ample factual support Plaintiffs provide (<u>see, e.g.</u>, doc. 45-5 at 10-15), leads the Court to concur—Plaintiffs qualify as FLSA employees. It now turns to enterprise liability and the remaining issues Plaintiffs raise.

## C.   <u>Enterprise Liability</u>

Before recovering unpaid minimum wage, "an employee must first demonstrate that he is 'covered' by the FLSA."   <u>Josendis v. Wall to Wall</u>

<u>Residence Repairs, Inc.</u>, 662 F.3d 1292, 1298 (11th Cir. 2011).  Two types of coverage exist, individual and enterprise.  <u>Id.</u>  "[A]n employee is subject to enterprise coverage if he is 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'" <u>Id.</u> at 1299 (quoting 29 U.S.C. § 207(a)(1)).

> An enterprise is engaged in commerce or in the production of goods for commerce if it
>
> > (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
> >
> > (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

<u>Id.</u>

Plaintiffs contend that Swinging Richards engages in commerce by selling "a wide variety of domestic and imported alcohols," via two onsite "ATMs that make use of the Internet and telephone lines for processing customer credit cards," and because it had gross revenues "far in excess" of $500,000.  Doc. 45-5 at 7.  Those facts are undisputed.  Doc. 52-16.  Because they establish that the club engages in commerce, the Court finds that 1400 is a covered enterprise subject to

13

the FLSA's minimum wage requirements.[2]

### D.   Jones as Joint Employer

"Employer" under the FLSA means "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). As the breadth of that definition illustrates, an employee can have more than one employer. 29 C.F.R. § 791.2(a) ("A single individual may stand in the relation of an employee to two or more employers at the same time. . . ."). And corporate officers can qualify as FLSA employers. See Patel v. Wargo, 803 F.2d 632, 637–38 (11th Cir. 1986) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."). "To be personally liable," however, "an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." Id.

Undisputed facts show that Jones "is 1400's sole owner, is its CEO, hires

---

[2] This Court, based on the same alcohol allegations at issue here, found the same about a year ago in Henderson. 2016 WL 3125012, at *2 (N.D. Ga. June 3, 2016) ("[W]hen the Defendant 1400 sells alcoholic beverages to its customers, the customers are the ultimate consumers of goods that moved through commerce" and thus 1400 engaged in commerce for FLSA purposes).

Swinging Richards managers and accountants, hires its legal counsel, made the decision to have Swinging Richards dancers start to fill out timesheets each shift in approximately March 2014, and is responsible for the decision to classify Plaintiffs and other dancers as independent contractors for tax purposes. The General Manager of Swinging Richards reports directly to Jones, and Jones communicates with the club's accountant once or twice a week." Doc. 45-5 at 17 (footnotes omitted) (citing doc. 45-1 at 9-10).

That level of involvement, in the face of no defense-introduced facts to the contrary (indeed, no defense facts on this point at all), suffices to impose personal liability on Jones. Hiring dancers is perhaps the only facet of the club with which he is not directly involved. And Jones unquestionably exercised more day-to-day control than the company president in <u>Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.</u>, who "had not even visited [his] facility more than once a year" and was thus not subject to individual FLSA liability. 515 F.3d 1150, 1161 (11th Cir. 2008). Jones therefore qualifies as a joint employer who is jointly and severally liable for any FLSA violations by 1400.

**E.    <u>Service Charge Off-sets</u>**

Defendants assert several affirmative defenses, including that customer

15

payments to dancers qualify as "service charges," not tips,[3] and thus may offset Defendants' FLSA minimum wage obligations.  Doc. 11 at 2.  In particular, they believe that the VIP room fees—those paid in cash, as well as those paid with credit cards—qualify as service charges.  Doc. 52 at 4.

True service charges[4] may indeed offset minimum wage obligations.  See 29 C.F.R. § 531.55; Henderson, 110 F. Supp. 3d at 1322.  "[F]or a fee to constitute a 'service charge,' it must be (1) recorded in a company's gross receipts, and (2) distributed by the company to the employee."  Henderson, 110 F. Supp. 3d at 1322.

First, all table side and stage dance payments from customers to dancers do not qualify as service charges because 1400 had no role distributing those sums to the dancers—the customers paid the dancers in cash.  Whether recorded or not then, those amounts cannot offset Defendants minimum wage obligations.  Id.

The VIP room payments spin a wilder tale.  For one, they come in both

_____

[3] A tip " is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him."  29 C.F.R. § 531.52.

[4] Service charges "are not tips for the purposes of the [FLSA]. Where such sums are distributed by the employer to its employees, however, they may be used in their entirety to satisfy the monetary requirements of the [FLSA]."  29 C.F.R. § 531.55(b).

16

cash and credit card varieties, each of which has different recording and distribution implications. When "VIP room customers pay a dancer with cash . . . the VIP doorman keeps the cash in an envelope designated for that specific dancer until the end of the night, at which time the dancer collects it." Doc. 45-1 at 11. When customers pay with a credit card, 1400 "issues the dancer a check 24 hours later." Id.

After this Court ruled that Swinging Richards' VIP room fees "may not be classified as "service charges," Henderson, 110 F. Supp. 3d at 1323, Jones instructed 1400's accountant to include cash and credit card fees "in the company's gross receipts" on its tax returns. Doc. 45-5 at 23; doc. 45-1 at 12. To calculate the cash amounts, the accountant extrapolated "the amount of cash the dancer should have received," an unrecorded figure at the time, based on the amount of time spent in the VIP room, something the club did track. Doc. 45-1 at 12.

At some point, the club began using receipts to track the amount of cash the dancers received. Doc. 45-1 at 13. That amount was never inputted into the company's spreadsheets, and the physical receipts landed in a box, "without any organization." Doc. 45-5 at 24; doc 45-1 at 13. The accountant, however, never

17

used those receipts to calculate club revenues — she continued to extrapolate from time spent in VIP rooms.  Doc. 45-1 at 13.  Although the club now requires dancers "to write their total cash received on the back of their time[]cards, [it] does nothing with that information for accounting purposes."  Doc. 45-1 at 14.

Cash implications first.   Plaintiffs contend that the receipts and extrapolation calculation are "accounting trick[s]" that do not qualify as recording the payments in 1400's gross receipts.  Doc. 45-5 at 25.  Even if they amounted to recording, Defendants, say Plaintiffs, never distributed the cash. That latter point carries the cash day for Plaintiffs.

As noted, payments, even if included in a company's gross receipts, must be distributed from the company to the employee in order to qualify as minimum wage offsetting service charges.  <u>Henderson</u>, 110 F. Supp. 3d at 1322.  Cash payments, however, flowed from customers to an envelope, then to dancers at the end of the night.  Doc 45-1 at 11.  Defendants never distributed.  VIP room cash payments, then, regardless of their recording in gross receipts, are not service charges that can offset minimum wage obligations.

Credit card payments meet the same fate.  Defendants, to the extent they respond to this issue at all, present the same arguments as they did in <u>Henderson</u>

18

and in another FLSA case against a Jones-affiliated club.  See Dean v. 1715
Northside Drive, ___ F. Supp. 3d ___, 2016 WL 8812963, at *14 (N.D. Ga. Jan. 14,
2016).  Those cases refused to treat credit card payments differently than cash tips
received directly from customers because the method of payment did not alter
their essential character.  Id.; Henderson, 110 F. Supp. 3d at 1323.  Other cases
evaluating similar VIP dance room payments come to the same conclusion.  See,
e.g., Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 932–33 (S.D.N.Y. 2013)
("The accident that a subset of the performance fees happened to have been paid
by credit card . . . and therefore that these fees temporarily passed from the
dancer to [the club] before being converted to cash, does not alter their essential
character. That [the club] maintained incomplete records of the total performance
fees paid, with partial records being generated only by the happenstance that
some customers chose to pay by credit card, does not make the recorded
payments qualitatively different from the non-recorded ones.").

Nothing differentiates this case or Swinging Richard's credit card
payments.  But for the "accident" that they temporarily passed to 1400 before
their conversion to a check and payment to Plaintiffs, those payments mirror
cash payments that indubitably qualify as tips, not service charges.  Although

19

credit card payments, by virtue of their electronic transmission were recorded in Defendants' gross receipts and technically distributed by Defendants, they remained payments from a customer to the dancer for services rendered, and payments from which the club apparently deducted nothing (the record is silent about whether 1400 retained a processing fee, instead stating only that "[w]hen VIP room customers pay a dancer by credit card, the Company issues the dancer a check 24 hours later," see doc. 45-1 at 11). They thus remained tips, not service charges, and cannot be used to offset Defendants' FLSA obligation to pay a minimum wage.

## F.   <u>Back Wages</u>

Plaintiffs contend that Defendants paid no wages at all, yet had to pay Swinging Richards $20 per night they worked as a "house fee." Doc. 45-1 at 5, 14. Defendants assert only invalid objections to the "wages" fact (see supra at 4), and do not contest the house fee allegations. Doc. 52-16. In fact, they "agree that the [P]laintiff[s] . . . if they were non-exempt employees [(they are)], were entitled to be compensated at a rate of $7.25 per hour, net of any club-imposed mandatory deductions." Doc. 52 at 5.

At bottom, the undisputed facts show that Defendants paid Plaintiffs no

wages—they received only tipped compensation from customers—much less a minimum wage of $7.25 per hour.  On top of that, they paid $20 per shift in house fees.  Faced with those facts and no others, the Court agrees with Plaintiffs that "the method of calculating Defendants' back wage liability at trial should be "(1) $7.25 per hour worked, plus (2) all [house fees] paid by Plaintiffs to Defendants and their employees or agents during the relevant time period." Doc. 45-5 at 28; see also Henderson, 2016 WL 3125012, at *4 (granting plaintiffs' summary judgment motion on the same issue for the same reason).

### G.      Defendants' Counterclaims

In their sole counterclaim, Defendants assert that Plaintiffs breached their employment contracts by filing this lawsuit.  Doc. 11 at 10.  What's more, they say, "[p]ermitting the plaintiffs to retain service charges belonging to 1400 . . . while they assert their entitlement to additional wages in contravention of their agreements with 1400 . . . would unjustly enrich the plaintiffs and would reward their breaches of contract."  Id.  Defendants submit no evidence of a contract or unjust enrichment beyond the allegations in their counterclaim.

Plaintiffs argue that FLSA minimum wage rights "cannot be abridged by contract or otherwise waived."  Doc. 45-5 at 28.  "Because [they] were

employees," Plaintiffs say, any breach of contract claim fails as a matter of law. Id. at 29. "[T]o the extent that Defendants' counterclaim constitutes a claim for unjust enrichment," that too fails because "Plaintiffs received all their monies" from customers. Id. at 29-30.

Whether breach of contract or unjust enrichment, Defendants' counterclaims perish. As the party moving for summary judgment, Plaintiffs bore the initial burden of, at a minimum, pointing out an absence of evidence to support Defendants' claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). They met that burden. See doc. 45-5 at 28-30. Defendants then had to "go beyond the pleadings and by" the evidence on file show "that there is a genuine [dispute] for trial." Id. at 324.

Unfortunately, no evidence on file exists because Defendants never submitted anything to support their claims. Nor do they argue their point. Instead, defense counsel "respectfully refers" the Court to four case citations, then concludes that "there were valid contracts between plaintiffs and the club, there was a breach, and there was damage. Doc. 52 at 5-6. That's not enough. Defendants' counterclaim(s) fail.

## IV.   CONCLUSION

The Court accordingly finds that (1) Plaintiffs are employees, not independent contractors; (2) 1400 is an enterprise subject to the FLSA's minimum wage provisions; (3) Jones is an FLSA employer; (4) Defendants' "creative professional" defense fails; (5) VIP room fees do *not* offset Defendants' minimum wage obligations; (6) Defendants paid no wages, and thus Plaintiffs may recover $7.25 per hour plus reimbursement for all fees and fines paid; and (7) Defendants' counterclaims fail as a matter of law.

Plaintiffs' motion for partial summary judgment therefore is **GRANTED**. Doc. 45.  The parties must submit a proposed pretrial order within thirty days of the date this Order is served.

**SO ORDERED,** this 15th day of June 2017.


s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)